UNITED STATES DISTRICT COURTS
DISTRICT OF COLUMBIA

CIVIL DIVISION

Lisa Alfred,
          Plaintiff, *pro se*

vs                              Civil Action No.
                                1:06cv01118
                                Judge Richard J. Leon

Scribner Hall & Thompson LLP,
          Defendant

---

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**COMES NOW**, Plaintiff Lisa Alfred, appearing *pro se*, hereby petitions this Court to rule against the Motion to Dismiss filed by Defendant Scribner Hall & Thompson's, (hereafter referred to as the Law Firm), for the following reasons:

1. On June 30, 2005, the Plaintiff, an African-American woman over 40 years old, filed a complaint with the EEOC asserting discrimination by the Defendant Law Firm on the basis of race, sex, and age.

2. The Plaintiff provided EEOC with specific instances of disparate treatment that established a prima facie case for discrimination based on race, sex, and her age.

RECEIVED

NOV 3 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

3. Plaintiff had communicated these same claims to Defendant verbally and in writing shortly after she was terminated in February 2005 from the job she had held for three years. (Exhibit A)

4. During Plaintiff's initial interview with the EEOC intake clerk on June 30, 2005, Plaintiff specifically cited the same instances where other similarly-situated employees, particularly Caucasians, were never reprimanded or fired for similar or worse work-force problems. One was given ample notice and substantial severance pay. The EEOC Clerk assured her that only a short summary, written by the clerk, was all that was required to launch the EEOC investigation. Still, Plaintiff submitted her written complaint and assumed that this document would be appended to the EEOC short form. (Exhibit B)

5. The EEOC charging document provided by Defendant Law Firm in this Motion is not the **in toto** complaint form filed by the Plaintiff with EEOC on June 30, 2005.

6. Plaintiff's allegations, as repeated to Defendant and EEOC, formed the basis for this discrimination complaint.

7. Defendant erred in arguing that a Plaintiff must exhaust administrative remedies for each Title VII claim. In some instances, the Courts have allowed Plaintiffs to bring claims after an EEOC investigation is complete and without going through the administrative process when Plaintiff has provided notice to Defendant by lodging formal and informal complaints. Webb v. District of Columbia, 864 F.Supp. 175, 184 (D.D.C 1994). Plaintiff has provided Defendant with ample notice of these claims prior to this lawsuit.

8. An EEOC administrative oversight was at fault for omitting the additional claims. Citing a lack of resources and staff, the EEOC Washington Field Office did not fully document the Plaintiff's complaint and did not investigate any of the alleged claims filed by Plaintiff on June 30, 2005.

9. Washington Field Office Supervisor Janet Stumpf informed Plaintiff after more than 180 days had passed without contact or an investigation that Plaintiff could obtain her right to sue letter by requesting it in writing.

10. According to Stumpf, EEOC had adopted a new policy that allowed complaints that had not been assigned to an EEOC investigator within six months after

filing could proceed upon request to the judicial
system without an EEOC determination. Having waited
more than 180 days after filing the complaint,
Plaintiff subsequently requested and obtained the
right to sue letter.

11. Defendant Law Firm cannot contend that it lacked
notice of Plaintiff's claims of not only race-based
but sex and race discrimination because these
theories were communicated to the Law Firm's
attorney beginning in April 2005 in writing and
again just prior to filing the EEOC charge.
Defendant rejected these claims outright (Exhibit
c).

12. Having provided prior notice of these claims to
Defendant, Plaintiff contends that she has met the
mandatory prerequisite notice that was the impetus
for this requirement. Defendant had ample
opportunity to mediate and reach some conciliation
agreement with Plaintiff before this lawsuit.

13. Further, the instances of sex and age
discrimination arise from the same incidents of
race-based discrimination and are not discrete acts.
Where claims arise out of the same or similar acts,
the Court has not required Plaintiff file an EEOC

charge. Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992).

14. The District Courts have allowed a Plaintiff to bring claims that "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." Loe v. Heckler, 768 F.2d 409, 420 (D.C. Cir. 1985).

15. As such, the requisite exhaustion of the administrative process regarding Plaintiff's sex and age discrimination claims should not be a barrier to Plaintiff pursing these claims, particularly when these instances arise out of and overlap with race-based incidents.

16. Finally, the Plaintiff has established the prima facie case for racial discrimination with the prerequisite EEOC charging document and right to sue. Dismissal of this complaint would unjustly deny the Plaintiff the only remedy available to correct an administrative error by the EEOC Washington Field Office.

WHEREFORE, Plaintiff asks that the Court find in her favor and dismiss the Defendant Law Firm's Motion.

Respectfully submitted,

Lisa Alfred
Pro Se Plaintiff

Susan Hotine
Mark Kovey
Managing Partner
Scribner, Hall & Thompson, LLP
1875 Eye Street, NW
Suite 1050
Washington, DC 20006-5409

Dear Ms. Hotine and Mr. Kovey:

I would like to thank both of you for the opportunity to have worked with Scribner, Hall & Thompson. I believe that during my 3 year tenure, I contributed to the firm's success, while growing both personally and professionally from the experience.

Therefore my termination on Friday, 18 February 2005, came as a complete surprise to me. I was only told by my supervisor, Ms. Jane Burton, that my termination was effective immediately and that I was to clear out my desk. I was later told that I would receive only a week's severance pay. My last paycheck was issued on Monday, 28 February 2005.

As you know, I have worked extremely hard over the years, earning numerous compliments and the respect of both attorneys and staff. My reputation is of utmost importance to me. I think that my excellent reviews and work history over the past years support this fact. I have never received any verbal or written warnings, nor has anyone even hinted in passing conversations, that my performance or professionalism in the workplace had fallen below acceptable standards.

Given my work history, my termination was unforeseen. I was left totally unprepared financially and emotionally for this action. And even after several years of employment, I was not offered the standard professional courtesies, such as advance notice, administrative leave, a work improvement plan, or even a decent severance package. Additionally, the abrupt manner in which I was terminated, and the failure to offer any substantive reason for this action, create a perception that I may have committed some egregious or illegal act. I can state categorically that I have NOT committed either of these, and I am prepared to defend my reputation at the highest levels.

More importantly, I am obligated in my job applications to state the unpleasant truth, which is that I was fired from my job. I expect that I will be asked to provide some rational reason for my termination to potential employers. This fact raises serious concerns on my part, chiefly because my inability to offer any explanation is more than likely to have an adverse impact on my ability to obtain comparable employment within a reasonable time.

It is for the above stated reasons that I request that you review the circumstance(s) surrounding my termination and determine whether I was treated fairly. Meanwhile, I would like the firm to provide me with the following:

1. Written explanation as to the cause of my termination.
2. A minimum of six (6) months of salary.
3. Continuing payment of six (6) months of health insurance benefits.
4. A letter of recommendation.
5. Assurance that my unemployment insurance benefits will not be contested.
6. A copy of my personnel file forwarded to my home address listed below.

I am currently weighing my options but I hope that we can reach an amicable settlement. Time is of the essence, therefore I would greatly appreciate a response within seven (7) days.

Thank You

Lisa Alfred
1608 H Street, SE
Washington, DC 20003-3110

cc:    Mary C. Williams, Attorney at Law, Bar No. 489632

*Ex. B*

30 June 2005

Dana Hutter
Acting Director
Washington Field Office of the U.S. Equal Employment Opportunity Commission
1801 L Street, NW
Suite 100
Washington, DC 20507

RE:    **Complaint of Discrimination by Lisa Alfred against Scribner, Hall & Thompson, LLP**

Dear Ms. Hutter:

    Attached is a complaint that I am filing with your Office detailing what I believe are acts of discrimination that have been experienced by myself.

    Please let me know if you need any additional information during your review process.

Thank You

*Lisa Alfred*

Lisa Alfred
1608 H Street, SE
Washington, DC 20003-3110
202-547-1304

**The name, address, and telephone number of the person filing the charge.**

LISA ALFRED
1608 H Street, SE
Washington, DC 20003-3110
202-547-1304

**The name, address, and telephone number of the company, employment agency, or union that the charge is filed against.**

Susan Hotine, Managing Partner
Mark Kovey, Managing Partner
Scribner, Hall & Thompson, LLP
1875 Eye Street, NW
Suite 1050
Washington, DC 20006-5409
202-331-6565

**The number of employees (or union members), if known.**

9 Partners
2 Associates
8 Staff Members

**A short description of the event(s) with supporting documentation (if any) which caused the person filing the charge to believe that his or her rights were violated.**

The incidents noted will show how Scribner, Hall & Thompson, LLP has retained several employees who clearly exhibited an inability to complete work assignments and work effectively with staff. Additionally, these incidents show a pattern of acceptance of certain behaviors by white employees, that has not been extended to Ms. Lisa Alfred.

Lisa Alfred, the complainant, is a 40-year-old African-American woman. She is a graduate of the University of New Orleans and has extensive work experience in the public interest sector. She is a community activist and serves as president of the Barney Circle Neighborhood Watch Association.

Ms. Alfred was employed as a secretary/assistant office manager with Scribner, Hall & Thompson, LLP from February 2002 to February 2005. On Feb. 18, 2005, Ms. Alfred was fired by the Office Manager without reasonable explanation. She was given one-week severance at the time and asked to clear out her desk immediately.

On Feb. 28, 2005, Ms. Alfred was informed that she would receive an additional two weeks pay on March 15, 2005.

Until Feb. 18, 2005, Ms. Alfred was a valued employee who received numerous commendations from her supervisor, Managing Partner Mark Kovey, and earned high marks on annual reviews. During her 3-year tenure, Ms. Alfred was recognized repeatedly for going beyond her assigned duties to resolve critical work-place problems. She was highly regarded by staff and management and often served as the representative on administrative issues.

The only negative notation on Ms. Alfred's record stemmed from her failure to phone in when she was going to be late. This was noted in her 2004 review and Ms. Alfred corrected this.

Ms. Alfred requested, but has not received, any written explanation for her termination. Kevin Byrnes, an attorney representing Scribner, Hall & Thompson, LLP, contends that the Firm could terminate Ms. Alfred without cause because she is an at-will employee. The Firm, then offered to provide only an additional month's pay if Ms. Alfred signed a release form.

Ms. Alfred refused to sign until she was provided with her personnel records, 6-months of health benefits and pay, and a letter of recommendation to assist her in finding another job.

Ms. Alfred contends that she was treated differently from the Firm's white employees, several of whom were either given 9 months notice of a separation or allowed to continue in their jobs despite numerous work-place challenges or substandard job performances. One of the employees whose performance was substandard was even called back for additional work after leaving the Firm.

<u>Examples of treatment of white employees</u>:

John Garies, white male, in his early 30s, was the firm's computer specialist. Over the last 3 years, there were numerous problems with the office's computer system due to Mr. Garies' lack of performance. This often resulted in complaints from staff. Mr. Garies made excuses for his work and did not work well in resolving computer related issues with the staff. In 2003, the managers announced to Mr. Garies that the Firm would "reorganize" its information technology section headed by Mr. Garies. The Firm then hired an outside consultant to do the work. Mr. Garies' services would no longer be needed and he was given 9 months notice of his separation. Despite Mr. Garies' dismal work performance, he was also given a sizeable bonus when he left.

Virginia Rojo, white female, in her late 30s, was hired as a temporary secretary and then hired full-time. During her full time tenure, Ms. Rojo alienated the staff, drank and used expletives while on the job, and was an all around unpleasant person. She was rude and completed most of her assignments at the very last minute. Ms. Rojo was allowed to routinely take more vacation leave than was allotted. It was well known throughout the Firm that Ms. Rojo was "liked" by Susan Hotine, the managing partner, despite her poor work ethic and unprofessional behavior. When Ms. Rojo left the job on her own, it was discovered that she had not performed much of the filing or work assigned to her. Yet, months later, Ms. Rojo was invited back to complete a temporary assignment.

Susan Maloney, a white female, is currently a paralegal with the Firm. She has a great

personality and is well liked but has difficulty completing assignments without lots of supervision. For that reason, the attorneys will not give her paralegal work to perform. She is barely assigned administrative work. Still, Ms. Maloney remains on staff in the position as paralegal, and has remained so for many years.

Colleen Crowley, a white female, is a Tax Specialist with the Firm. She has had difficulty meeting her job goals, including failing to produce a monthly publication on a regular basis. Upon discovery of her failure to produce the monthly regularly, the Firm handed the duties over to another employee. Additionally, Ms. Crowley often handed over her duties to secretaries to perform. The Firm has not taken any adverse action against her. She remains an employee.

**The names, addresses, and telephone numbers of any witnesses.**

Several of the attorney's and staff can attest to the incidents stated in the complaint. They can be contacted at:

Scribner, Hall & Thompson, LLP
1875 Eye Street, NW
Suite 1050
Washington, DC 20006-5409
202-331-6565

**Whether the individual has filed the same or similar charge with a state or local fair employment practice agency**

No other complaint has been filed.

**The name, address, and telephone number of a person who always knows where to contact the person wishing to file a charge.**

Mary C. Williams, Esq.
1257 Carrollsburg Place, SW
Washington, DC 20024
202-488-0869

*Ex. C*

LAW OFFICES

# WADE & BYRNES P.C.

616 NORTH WASHINGTON STREET
ALEXANDRIA, VIRGINIA 22314-1991
Phone: (703) 836-9030
Fax: (703) 683-1543
Web-site: www.WadeandByrnes.com

Gregory M. Wade (VA, DC, MD)
Kevin Byrnes (VA, DC)
Matthew T. Sutter (VA)

E-Mail: gwade@wblawpc.com
E-Mail: kbyrnes@wblawpc.com
E-Mail: msutter@wblawpc.com

April 18, 2005

**By Mail & Facsimile(202)331-3759**
Ms. Mary C. Williams
Williams & Cunningham
1717 K Street, NW
Suite 600
Washington, DC 20032

Dear Ms. Williams:

This responds to your letter of April 11, 2005, which was received via facsimile and regular mail. We have attempted to reach you by telephone and electronic mail but have yet to be able to speak with you.

We can not agree with your client's characterizations of the facts, and believe her claims are devoid of legal merit. Contrary to your assertion, the at-will doctrine does not require a prior written notice to the employee. Instead, it is the presumed state of affairs when there are no written instruments to establish otherwise. Strauss v. Kaiser Found. Health Plan, 744 A.2d (1000) (D.C. Cir 2000); Perkins v. District Government Employees Federal Credit Union, 533 A.2d 842 (D.C. 1995). Indeed to overcome the presumption, an employee must establish the clear intent of the employer to not have a dischargeable at-will policy. Littel v. Evening Star Newspaper Co., 73 App. D.C. 409, 120 F.2d 36 (1941).

Further, contrary to your claim, there were no "office policies" that establish Ms. Alfred was a "for-cause" employee. Even where they do exist, office policies do not create contractual duties which amend the at-will doctrine without a clear showing that the employer meant to have a non-at-will arrangement. Littel, supra.

Ms. Alfred's conduct, some of which we outlined in our letter, would have supported her discharge even where she is a "for cause" employee. In fact, we noted several examples of inappropriate behavior by Ms. Alfred and note that your letter fails to either deny or address such incidents.

Ms. Alfred's contention that she was not counseled in advance of her discharge and that she was not upon her discharge advised of those grounds by Mr. Kovey is simply untrue. It was clearly communicated to Ms. Alfred that the Firm believed her continued employment was not in their, or Ms. Alfred's best interests. If pressed on the matter, the Firm is prepared to establish that Ms. Alfred was caustic, disruptive, insubordinate, unprofessional, and towards the end of her tenure, slipping in performance to a point that no reasonable employer would have tolerated her continued employment.

Ms. Alfred's allegations that she was the subject of "disparate treatment" or that "other motives" were involved are similarly baseless. Scribner, Hall & Thompson treated Ms. Alfred with dignity and respect, despite the fact she acted in a disparaging manner to the Firm's partners, refused to follow office procedures, attempted to foment dissatisfaction among the clerical staff and treated outside callers in a less then professional fashion. Such actions provide ample and legitimate business justifications for the discharge. If Ms. Alfred, however, has evidence that other similarly situated employees were given preferential treatment or some illegitimate motive existed for her removal, she should state such a claim and we will consider it. Otherwise we must perceive such vague allegations of improper motives as little more than an attempt to cause a settlement through innuendo, something the Firm will not do and we will not countenance.

We also decline to give Ms. Alfred anything other than the relief we previously proposed. We will, in an effort to settle the matter, agree to extend our offer for a period of seven days from the date of this correspondence, at which time we will withdraw the offer and no further offers will be made.

Again, neither the law nor the facts of this case support your proposal. Ms. Alfred was not a long time employee and given the explanations she has received concerning her actions, none of which you have denied, should not be surprised by the Firm's position. Our discussion of the details of the discharge and our extension of an additional offer of compensation were designed to assist Ms. Alfred in getting on with her career, they were not an opening gambit for further negotiations.

I trust this establishes our final position and hope Ms. Alfred will sign a release and receive the additional compensation offered.

Sincerely,

Kevin Byrnes

cc: Susan Hotine/Scribner, Hall & Thompson

LAW OFFICES
# WADE & BYRNES P.C.

616 NORTH WASHINGTON STREET
ALEXANDRIA, VIRGINIA 22314-1991
Phone: (703) 836-9030
Fax: (703) 683-1543
Web-site: www.WadeandByrnes.com

Gregory M. Wade (VA, DC, MD)
Kevin Byrnes (VA, DC)
Matthew T. Sutter (VA)

E-Mail: gwade@wblawpc.com
E-Mail: kbyrnes@wblawpc.com
E-Mail: msutter@wblawpc.com

April 19, 2005

**By Mail & Facsimile(202)331-3759**
Ms. Mary C. Williams
Williams & Cunningham
1717 K Street, NW
Suite 600
Washington, DC 20032

Dear Ms. Williams:

This responds to your recent telephone discussion regarding Ms. Lisa Alfred. As I noted you have yet to cite any factual or legal theory to support Ms. Alfred's request for additional compensation and without some discussion from you of a legal basis for Ms. Alfred's assertions, we see little reason to revisit our position. If you have a factually and legally supportable predicate on which to base a demand for severance, you have declined three separate invitations to state it. In fact, your argument seems to be that Ms. Alfred is a long term employee who was given no notice prior to her termination, thus she is simply entitled to a severance of six months.

Ms. Alfred worked at Scribner, Hall & Thompson for approximately three years. This is hardly long term employment. Further, she is not legally entitled to notice prior to her termination. Regardless, the facts as we have stated do not support her claims of lack of notice. Our position was clearly reiterated in our letter of April 18, 2005 which is attached.

You have stated that you need not provide any case law or evidence that Ms. Alfred has viable claims to obtain the six months severance you seek. That may be true in the purest sense, but I can not advise a client to simply give Ms. Alfred more money, without some rationale. Indeed, the severance you seek amounts to a pay equaling 20% the total time Ms. Alfred actually worked. Even where there is a completely voluntary departure of an established, highly regarded employee, such a demand would be unreasonable.

You have also stated that the termination was "very suspicious." When pressed on this issue, you cited no reasons for that suspicion and I asked you quite candidly to state whether you believed the discharge was discriminatory. You provided no reason, proof, or response.

Frankly, we both have an obligation to pursue only factually valid and legally supportable claims, and to date, Ms. Alfred has raised none. If you were to proceed as threatened without any basis, we reserve the right to seek appropriate judicial sanctions.

In closing, if you have a viable claim, we need to hear it. Otherwise, I must reject any further discussion on this issue.

Sincerely,

Kevin Byrnes

cc: Susan Hotine/Scribner, Hall & Thompson
enclosure: as noted

## POINTS OF AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), the Defendant's Motion to Dismiss for failure to state a claim for which relief can be provided must be construed by the Court in a light most favorable to the Plaintiff. The Court must grant the Plaintiff the benefit of all inferences that can be derived from the alleged facts. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir 1994).

Plaintiff is an African-American woman, over the age of 40 years old, who was fired from her job after three years. She was given no notice or explanation for the termination, offered one-week severance pay, and denied a letter of recommendation, even though the Defendant had provided employees of a different race and class with same or similar benefits. As such, Plaintiff has established a prima facie case for discrimination stemming from disparate treatment based on race, sex, and age. To establish a disparate treatment claim, Plaintiff provides that 1) She was a member of a protected class; 2) That she suffered an adverse employment action; and 3) That the unfavorable action gives rise to an inference of discrimination. Brown v. Brody, 199 F.3d 446, 4452 (D.C. Cir. 1999).

NOTICE OF SEX AND AGE DISCRIMINATION CHARGE

Title VII requires that a Plaintiff file a charge with the EEOC prior to bringing a lawsuit. Under 42 U.S.C. δ2000e-5(f)(1), the EEOC would investigate the Plaintiff's claims before issuing a right to sue letter. However, in this instance, the EEOC's Washington Field Office lacked the resources and staff to investigate the Plaintiff's claims in a timely manner. After more than 180 days passed without the claims having been "assigned" to an investigator, the EEOC supervisor informed Plaintiff that she could request, in writing, the right to sue letter and proceed in the judicial system. Plaintiff wrote the letter and obtained the letter, along with the EEOC charge sheet, which erroneously listed race as the only claim filed by Plaintiff and omitted sex and age, as well as the original complaint filed by Plaintiff that specified the claims.

EEOC's failure at this juncture to fully document the Plaintiff's claims is problematic because there is no mechanism by which to hold EEOC accountable for its negligence or malfeasance in processing claims. Rather, according to the legislative history of the Title VII amendments, Congress relied solely on the private right of action to remedy problems with the EEOC process.

To dismiss the Plaintiff's related sex and age discrimination claims because of an EEOC oversight when this is the only remedy available to her would be unjust. Finally, the underlying reason for requiring exhaustion of the administrative remedy in the Act was to put an employer on notice and to give the employer an opportunity to pursue resolution with the employee before a suit is brought, and/or prepare a defense. Johnson v. Albright, 992 F.Supp. 37, 39 (D.D.C. 1998).

Defendant Law Firm admittedly had ample notice of the Plaintiff's claims of discrimination beginning almost immediately after her termination in February 2005, and again in April 2005, just prior to Plaintiff's filing of the EEOC charge in June 2005. Defendant responded that the charges were frivolous and rejected attempts to settle the matter.

Plaintiff established the prima facie standard for discrimination and proceeded through the EEOC process in good faith before filing this lawsuit. An administrative error by EEOC, which caused no harm to the Defendant, should not be allowed to block Plaintiff's pursuit of justice.

Respectfully,

Lisa Alfred
*Pro Se* Plaintiff

## CERTIFICATE OF SERVICE

I, Lisa Alfred, hereby certify that I have mailed a copy of the foregoing documents by U.S. First Class mail on the 30th day of November 2006 to Kevin Byrnes, the Defendant's Attorney, at his business address.

Kevin Byrnes, Esq.
616 N. Washington St.
Alexandria, VA  22314

_____
Lisa Alfred
Pro Se Plaintiff

UNITED STATES DISTRICT COURTS
DISTRICT OF COLUMBIA

CIVIL DIVISION

Lisa Alfred,
          Plaintiff, *pro se*

vs                              Civil Action No.
                                1:06cv01118
                                Judge Richard J. Leon


Scribner Hall & Thompson LLP,
          Defendant

## ORDER

        Upon consideration of this Motion to Dismiss filed by
Defendant Law Firm, and after hearing argument on behalf of
all parties concerned, it is, by the Court, this _____
day of _____, 2006

**ORDERED**

1) THAT THE MOTION TO DISMISS BE, AND IT IS HERBY

**DENIED**

2) AND THAT _____

        _____


_____
Judge Richard Leon


COPIES TO: Lisa Alfred, Pro Se Plaintiff

          Kevin Byrnes, Defendant Counsel